SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-cr-00182-AB |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| BRIDGET HADLEY RYAN, | |
| Defendant. | |

The government asks the Court to impose a sentence of 57 months' imprisonment, to be followed by a three-year term of supervised release. The defendant ran a drug-house from which she distributed fentanyl and other drugs. Her drug house operations became a source of blight for the residents in her neighborhood. While the defendant herself has struggled mightily with her own addiction issues, she nevertheless kept selling fentanyl and other drugs to others who were likewise struggling just as much as she was. Three of her customers died from drug use.

The defendant has suffered a difficult life, and she has truly benefited from U.S. Pretrial supervision in this case. While under U.S. Pretrial Supervision she has successfully completed

**Government's Sentencing Memorandum** **Page 1**

an inpatient drug treatment program and outpatient drug treatment program.  She remains engaged in ongoing outpatient drug treatment.  Although there were some issues earlier on, since her successful competition of drug treatment in January 2025, she has been doing remarkably well – she is sober, remains engaged in treatment, and she is working.  For all of this she should feel very proud.  Ms. Ryan's achievements in successfully completing treatment and what she has done since then are things the Court can and absolutely should consider at sentencing.  Those achievements rightly, as the U.S. Probation Office has recommended, warrant a sentence below the defendant's advisory sentencing guideline range and the government has joined in their recommendation.  We understand the defendant will seek a lesser sentence and we understand the basis in doing so.

However, we are also here to sentence her for the underlying crime that brought us all to this moment in time – the defendant was selling fentanyl, and other drugs.  Fentanyl is an incredibly addictive, destructive, and deadly poison.  A poison that kills.  She was operating a "drug house" that brought crime and decay into the neighborhood.  Given the significance of her crime, her advisory sentencing guidelines, and her personal history and characteristics – both the good and the bad – the government concurs with the U.S. Probation Office and believes a sentence of 57 months of imprisonment is reasonable.

A.      **Summary of Proceedings.**

On July 16, 2025, the defendant pled guilty to Count 1 of her Indictment which charged her with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).  The maximum sentence the Court may impose is a term of 20 years'

///

**Government's Sentencing Memorandum**                                                                **Page 2**

imprisonment, a fine of $1,000,000, and at least three years of supervised release.  There is a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government believes that the facts underlying the defendant's count of conviction (PSR ¶¶ 27 - 48), Sentencing Guideline calculations (PSR ¶¶ 53 - 63), criminal history (PSR ¶ 66 - 68), and her personal history and characteristics (PSR ¶¶ 74 – 90c) are accurately outlined in both the PSR and plea agreement.  In her plea agreement defendant admitted that:

> [O]n or about April 16, 2024, here within the District of Oregon, she possessed a quantity of fentanyl that she intended to distribute to other people.  Defendant knew she was selling fentanyl.  Fentanyl is a Schedule II controlled substance.  .

Plea Agreement ¶ 6.

The defendant was arrested on April 16, 2024, as part of a joint federal/state drug investigation involving the Portland Police Bureau's (PPB) Narcotics and Organized Crime (NOC) Unit and Homeland Security Investigations (HSI).  The investigation arose from multiple separate investigations that eventually came together – three separate fatal overdose deaths in which the defendant was implicated as being a source of supply for the victims and a series of "drug house" complaints that had been made by the neighbors – all of which focused the PPB NOC and HSI investigation on the defendant.

As the PSR notes, the defendant was identified as selling drugs to three people who subsequently died of drug overdoses: in August 2021, Victim 1 died in Vancouver, Washington from the "combined toxic effects of fentanyl and methamphetamine" and the defendant was identified as a source of supply for fentanyl the victim bought (PSR ¶ 27); in November 2021,

**Government's Sentencing Memorandum**                                                    **Page 3**

Victim 2 died in Portland, Oregon from "complications of chronic intravenous drug use" and the defendant was identified as a source of supply of heroin the victim bought (PSR ¶ 28 – 32); and, later in November 2023, Victim 3 died as the result of "acute Fentanyl, Norfentanyl, 4-ANPP, and Mitragynine intoxication" and the defendant was identified as a source of fentanyl the victim bought (PSR ¶ 33 – 34).[1]

As PPB NOC and HSI investigators were investigating these overdose deaths, they also came across a series of "drug house" complaints that neighbors had made over the years about the defendant's activities at the Macleay Boulevard address and the resulting drug use, drug paraphernalia, and property crime that was resulting. From January 2024 through April 13, 2024, investigators started regular surveillance on the defendant's house, where she lived with her parents. The investigators observed a pattern of people who appeared to be drug users coming and going from the residence. With this information, investigators applied for and obtained a warrant for the defendant's residence.

On April 16, 2024, the warrant was executed on the defendant's residence and she was taken into custody on federal charges. Inside the residence investigators found and seized small amounts of fentanyl (approximately three (3) grams), LSD (20 squares), psilocybin (46 grams), a

---

[1]    The government has extensively reviewed the reports associated with all three overdose deaths and, while all three deaths involved drug use, the medical experts were unable to establish that the controlled substance sold by the defendant were either the "but-for" cause of death or an independently sufficient to cause the death. *See Burrage v. United States*, 571 U.S. 204, 218-19 (2014); *see also*, *Taking the Fear Out of Prosecuting Drug Overdose Cases,* DEPARTMENT OF JUSTICE JOURNAL OF FEDERAL LAW AND Practice, 51, 62 – 71, March 2024 (further explaining the *Burrage* legal standard). Thus, both legally and factually, the government could not prove beyond a reasonable doubt or by a preponderance of the evidence that the defendant caused the victims' death. These three tragic deaths did, however, identify the defendant as a drug distributor.

.22 caliber revolver, digital scale with fentanyl residue, lots of drug paraphernalia (baggies, burnt pieces of foil, used and unused needles, straws, lighters, and razor blades), Narcan, defendant's phone, a notecard with defendant's Cash App account user name, and drug ledgers.  PSR ¶¶ 41 – 42.  Pictures of some of the seized items as well as photographs from the defendant's phone are below:




///

///

///



 

The pictures of counterfeit fentanyl pills from defendant's phone were also found on the phones of two of the overdose victims.  PSR ¶ 44.

///

///

**Government's Sentencing Memorandum**                                                        **Page 6**

From the drug ledgers and information gleaned from the defendant's Cash App account, which was being used to accept payment for drugs, investigators were able to determine the defendant distributed at least between 160 and 280 grams of fentanyl. PSR ¶ 53.

**B.     Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

The parties have agreed that, based upon the amount of fentanyl the defendant possessed with intent to distribute, her initial Base Offense Level is 26, pursuant to U.S.S.G. § 1B1.3 and 2D1.1(a). PSR ¶ 53, Plea Agreement ¶ 8.

Because defendant possessed a firearm in connection with the offense, pursuant to U.S.S.G. § 2D1.1(b)(1), the parties agree that the defendant's initial Base Offense Level should be increased by two-levels. PSR ¶ 54, Plea Agreement ¶ 9.

The parties also agree that because defendant maintained a premises for the purpose of distributing a controlled substance her offense level should be increased by two-levels, pursuant to U.S.S.G. § 2D1.1(b)(12). PSR ¶ 55, Plea Agreement ¶ 10.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. PSR ¶¶ 61 - 62, Plea Agreement ¶ 13.

Prior to any additional departures or variances, the defendant's initial Adjusted Offense Level is 27.  With a Criminal History Category of I, defendant's initial advisory sentencing guideline range is 70 to 87 months' imprisonment.

Defendant was arrested on April 16, 2024.  On May 22, 2024, she was granted release to pretrial supervision, but was ordered to remain in custody until an inpatient treatment bed became available.  PSR ¶ 22.  On May 30, 2024, she was released to in-patient drug treatment. *Id.*  The defendant was held in custody on this case for approximately one month and 15 days. PSR *1.

**C.      Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we joint the U.S. Probation Office recommendation and ask the Court to impose a sentence of 57 months imprisonment, to be followed by a three-year term of supervised release.  As noted in the plea agreement the government remains open to reviewing any additional mitigation evidence prior to sentencing.

While the government understands that the defendant is now doing very well on pretrial supervision after successfully completing an inpatient drug treatment program, an out-patient drug treatment program, and remaining engaged in out-patient treatment services, we also remember what brought us here – the defendant was selling fentanyl, and other poisons, to people in the community.  The people she was selling to were in someways similar to herself – they were also struggling with addiction issues and from them, the defendant profited.  Three people that she sold drugs to eventually died from drug use – an incredibly tragic result.  The "drug house" in which she lived in and operated from brought misery and blight to her neighborhood.

**Government's Sentencing Memorandum**                                              **Page 8**

The defendant was not a large fentanyl dealer, but you don't need to be a large dealer to cause a large harm.  Fentanyl is extremely addictive, it is destructive, and it is deadly.  It is a poison that has afflicted the community and this defendant was selling it.  What she was doing kills people.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

Oregon-Idaho High Intensity Drug Trafficking Area (HIDTA) 2026 Threat Assessment, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses are still the leading cause of death.  *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024).  In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses.  *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023).  Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.  *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023).  In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths. *Oregon Health Authority Oregon Department of Education Fentanyl & Opioid Response Toolkit for Schools* (January 2024).  In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl.  *Oregon Overdose Prevention Dashboard*, Oregon Health Authority (May 1, 2025).  In 2023, "Oregon had the

highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."  *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, the death count from illicit fentanyl remains incredibly high in the state.  *Oregon overdose deaths are down, CDC data shows,* Oregon Health Authority (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show.");  *U.S. Overdose Deaths Decrease Almost 27% in 2024,* National Center for Health Statistics, U.S. Centers for Disease Control and Prevention (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).  Nationally, data has also shown that aggressive law enforcement actions removing fentanyl from the streets is seen as a strong contributing factor in the reduction in overdose deaths.  Hannah Harris Green and Matt Kiefer, *Overdose in America: analysis reveals deaths rising in some regions even as US sees national decline*, THE GUARDIAN, * 4 (Oct. 17, 2025) ("Of the factors the Guardian analyzed, changes to the amount of fentanyl, and in some cases methamphetamine, in the drug supply, as well as geography, were most strongly linked to changes in overdose deaths.… according to the Guardian's analysis, which also showed that peaks in overdose death rates lined up with peaks in fentanyl prevalence.  The percentage of

**Government's Sentencing Memorandum**                                          **Page 10**

drug seizures containing fentanyl peaked in 28 states in 2023, the same year that overdoses began to decline nationally.").

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 57 months' imprisonment is reasonable.  We ask the Court to impose it, to be followed by a three-year term of supervised release.

At the time of sentencing, we will ask the Court to dismiss Counts 2 and 3.

There is an appeal waiver.

Dated: October 30, 2025.                                   Respectfully submitted,

                                                          SCOTT E. BRADFORD
                                                          United States Attorney


                                                          /s/ *Scott Kerin*

                                                          SCOTT M. KERIN, OSB # 965128
                                                          Assistant United States Attorney

**Government's Sentencing Memorandum**                                   **Page 11**